UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALVIN FULTON, JR.,

        Petitioner,

    -v-                                      05-CV-6314(MAT)
                                                    **ORDER**
GARY GREENE, Acting Supt. of
Great Meadow Correctional Facility

        Respondent.
_____

## I. Introduction

Petitioner Alvin Fulton, Jr., a/k/a Shaik S. Muqtadir, ("Fulton" or "petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court of one count of Course of Sexual Conduct Against a Child (N.Y. Penal Law § 130.75(a)). Following a jury trial before Judge Patricia Marks, Fulton was sentenced as a second felony offender to a determinate term of imprisonment of 25 years. For the reasons set forth below, Fulton's § 2254 petition is denied and this action is dismissed.

## II. Factual Background and Procedural History

The victim ("Z.J.") was nine-years-old when her mother ("Nera") took the petitioner in as a border at their home on Clifford Avenue in the City of Rochester in July of 1999. Fulton proclaimed himself to be a Muslim minister, and after he had been in the house for a short period of time, he entered into a contract

1

marriage with Nera. T. 283-85, 425.[1] In the meantime, petitioner began molesting Z.J., which involved sexual touching, vaginal and anal intercourse, and oral sex. He was also violent with Nera. T. 219-231, 292-95.

Z.J. provided explicit testimony at trial about the incidents of molestation, and that it was continuous until November of 2000. She testified that she was afraid to tell anyone, because she feared that petitioner would "hit [her] like he hit [her] mom." T. 232. Although petitioner did not verbally threaten Z.J., he told her that her mother "wasn't stable", that her mother would kill Z.J. and her brother, and that Nera had even attempted to poison the children once. He also told Z.J. that her mother "[had] sex with a dog and like other animals." T. 233-34. Because the children were afraid of Nera, they refused to go with her when she first tried to leave the house and the petitioner. Eventually, Nera had to return with the police to retrieve her daughter, and took refuge at a women's shelter in late-November of 2000. T. 236-38, 293.

Approximately three months after leaving Fulton, Nera took Z.J. to a doctor because she "wasn't acting herself." Z.J. did not tell the pediatrician who examined her about the abuse, stating that she "didn't think she [the doctor] would do anything . . . she couldn't help." T. 297, 240. Z.J. finally disclosed the abuse to her mother in March, 2001, after attending a church service about

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

victims of sexual abuse. T. 242, 298.

At petitioner's trial, a pediatrician testified for the prosecution that there were no abnormal findings with respect to Z.J.'s physical examination, and that such a result is common in abused children. T. 347-49. A psychotherapist also testified about her interview with the victim, and about "Child Sexual Abuse Accommodation Syndrome". T. 358-68. Fulton testified in his own behalf, stating that he was a father to the children and "would never think of such a thing" as abusing his step-daughter. T. 420.

Petitioner's original indictment was dismissed on May 15, 2001 for failure to afford Fulton an opportunity to testify at the grand jury. The court granted the prosecution leave to re-present the case, and a second indictment was filed on June 15, 2001, having been voted on by the grand jury. See Appx. C, Record on Appeal, 10-11, 23. (Dkt. #6). Following pre-trial hearings, the case proceeded to trial, and petitioner was found guilty of the sole charge of Course of Sexual Conduct Against a Child. Petitioner admitted a prior felony, and, after a lengthy dialogue with the court, was sentenced by Judge Marks to a determinate sentence of 25 years. S. 26-26. He appealed his conviction to the Appellate Division, Fourth Department, raising three issues: 1) the court lacked jurisdiction because the petitioner was arraigned before the indictment was filed; 2) the petitioner did not receive adequate notice of the charges against him; and 3) the verdict was against the weight of

the evidence. The Appellate Division unanimously affirmed his conviction. People v. Fulton, 13 A.D.3d 1217 (4th Dept. 2004); lv.denied 4 N.Y.3d 796 (2005).  Fulton also raised additional points in a supplemental *pro se* brief, including lack of probable cause for arrest, insufficient grand jury evidence, defective grand jury proceedings, improperly filed indictment, legally insufficient evidence, ineffective assistance of counsel, and prosecutorial and judicial misconduct. Appx. E. The Appellate Division concluded that all of those claims were without merit.  Fulton, 13 A.D.3d at 1218.

Petitioner raised one ground in his application for leave to the New York Court of Appeals, whether the indictment was jurisdictionally defective because it was not properly filed prior to the petitioner's arraignment. See Appx. DD.

Fulton then  filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging fourteen grounds for relief. (Dkt. #1). The respondent has filed an answer opposing the petition on procedural grounds and on the merits. (Dkt. #5).  For the reasons stated below, the petition is denied and this action is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Federal Habeas Review**

        **1.    The Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not

be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen. of the State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court adopted a "total exhaustion" rule for habeas petitions by holding that a "mixed petition"-that is, one containing both exhausted and unexhausted claims-should be dismissed as a whole, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." 455 U.S. at 510. However, in 1996, the Anti Terrorism and Effective Death Penalty Act ("AEDPA") modified this "exhaustion rule", amending the habeas statute to provide as follows: "An application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available to the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis supplied). In other words, a petitioner's failure to exhaust state court remedies does not prevent a district court from reaching the merits

of the habeas petition if all the petition's claims, both exhausted and unexhausted, will be denied.

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. Naranjo v. Filion, No. 02Civ.5449WHPAJP, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (footnote omitted) (collecting cases). A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. (quoting Hernandez v. Lord, No. 00 Civ. 2306(AJP), 2000 WL 1010975, at *4-5 & n.8 (S.D.N.Y. July 21, 2000)) (Report and Recommendation) (internal quotations omitted) (analyzing the diverging views without deciding which standard is appropriate, and collecting cases)). Although numerous claims in the instant petition have not been fully exhausted, a review of the merits of all claims is appropriate in this case under § 2254(b)(2).

### B. Fulton's § 2254 Petition

#### 1. Exhausted Claim: Improperly-Filed Indictment

Petitioner's only claim that has been properly exhausted in the state courts is that he is entitled to habeas relief because

the indictment was not filed with the County Clerk prior to his arraignment. Petition ("Pet.") 19-23 (Dkt. #1). Fulton specifically contends that the trial court never obtained jurisdiction over his case because the prosecution failed to properly file the indictment pursuant to New York Crim. Proc. Law ("C.P.L.") §§ 190.65, 210.10. This, however is not a Federal Constitutional issue; it is a purely state law matter. Federal habeas review is available "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

An alleged error based upon a state procedural law is not a cognizable issue on habeas review. See, e.g. Lucius v. Filion, 431 F.Supp.2d 343, 346 (W.D.N.Y. 2006) (allegation that prosecutor failed to comply with statutory procedures regarding the grand jury proceeding is not cognizable on habeas review); Roberts v. Scully, 875 F.Supp. 182, 194 (S.D.N.Y. 1995) (holding that petitioner's complaint that re-submission of indictment to grand jury was premised solely on claimed violation of state procedural law). Accordingly, this claim does not present a proper basis for federal habeas relief.

Moreover, petitioner has failed to demonstrate an error for failure to comply with New York State law. C.P.L. § 190.65 provides that "[u]pon voting to indict a person, a grand jury must, through its foreman or acting foreman, file an indictment with the court by which it was impaneled." Section 210.10 in turn provides that "[a]fter an indictment has been filed with a superior court, the defendant must be arraigned thereon." Here, the transcript of the arraignment and the copy of the indictment indicate that petitioner was arraigned after the indictment had been filed. See Appx. C at 10; Arraignment Transcript dated 6/19/2001. On direct appeal, the Appellate Division held that the record did not support Fulton's contention that he was arraigned on the indictment before it was filed. Fulton, 13 A.D.3d 1217-1218 (4th Dept. 2004). The appellate court also found that, in any event, the language of § 190.65 was "directory, not mandatory, and that dismissal of the indictment would not be warranted even in a case of its nonfiling." Id. (citations omitted). In sum, petitioner has not alleged an error of constitutional magnitude, and this claim is therefore dismissed.

**2. Unexhausted Claims**

Fulton's remaining grounds for relief were not fully and fairly presented to the state courts, and, accordingly, are not properly before this Court. Arguments raised in a federal habeas petition may only be considered where the petitioner has first exhausted all state remedies. Grey v. Hoke, 933 F.2d 117, 119 (2d

Cir. 1991). State remedies are considered exhausted when a petitioner has presented the Federal Constitutional claim asserted in the petition to the highest state court, and has informed that court of both the legal and factual bases for the federal claim. Picard v. Connor, 404 U.S. 270, 276-77 (2d Cir. 1971); Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982)(*en banc*). Where a petitioner raises a single issue in his application for leave to appeal to the New York Court of Appeals, all other issues are not adequately presented and thus barred from federal review. Jordan v. Lefevre, 206 F.3d 196 (2d Cir. 2000); see also Grey, 933 F.2d at 120.

Here, Fulton's leave application to the Court of Appeals raised only one issue: that the indictment was not properly filed prior to arraignment. The other claims that petitioner now attempts to raise were not argued in his leave application. See Appx. AA. Additionally, Fulton's attorney did not make a passing request for permission to appeal on the basis of all issues argued at the Appellate Division. Cf. Lefevre, 206 F.3d at 198-99; Ramirez v. Attorney Gen. of State of N.Y., 280 F.3d. 87, 97 (2d Cir. 2001). Whether petitioner has adequate state remedies available to him regarding his claims is unclear. Although Fulton may potentially raise some of these issues through a C.P.L. § 440 motion, many, if not all, would be subject to dismissal pursuant to C.P.L. § 440.10(2). Under AEDPA, federal courts may now consider habeas

petitions containing unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2)(an "application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); accord, e.g., Rhines v. Weber, 544 U.S. 269, 277 (2005). The remainder of petitioner's claims are either not reviewable, patently frivolous, or without merit, as discussed below.

### a. Lack of Probable Cause

Petitioner first contends that he was arrested without probable cause. Pet. 4-7. (Dkt. #1). This argument was raised in a supplemental *pro se* brief to the Appellate Division, and was rejected as being without merit. Fulton, 13 A.D.3d at 1218.

The Supreme Court has held that as long as a state "has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465, 481-82 (1976). The Second Circuit refined Stone v. Powell to allow federal habeas review of Fourth Amendment claims only in two situations: (1) when the State "has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations"; or (2) when the State "has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable

breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). In Capellan, the Second Circuit also recognized that C.P.L. § 710.10 et seq., New York's procedure for litigating Fourth Amendment claims, is "facially adequate" to satisfy this test. Id. Therefore, a petitioner convicted in New York will be entitled to habeas relief only if the trial court did not allow the petitioner to avail himself of the C.P.L. § 710.10 et seq. procedures, or if there was an "unconscionable breakdown" in their application.

Because this claim was based upon an alleged Fourth Amendment violation, it is not cognizable on habeas review because nothing in his petition or reply brief suggests that Fulton was denied an opportunity to litigate that claim in the state trial court, or that there was an unconscionable breakdown in the state procedures. Stone v. Powell, 428 U.S. 465, 494 (1976). This claim is therefore dismissed.

### b. Grand Jury Deficiencies; Defective Indictment

Throughout his petition, Fulton makes a plethora of arguments relating to alleged defects in the indictment and deficiencies at the grand jury proceedings.[2] Pet. 8-18, 23-30, 33.

---

[2] Petitioner's arguments include, *inter alia*, that the evidence before the grand jury was insufficient, the legal instructions to the grand jury were improper and/or not properly recorded, prosecutorial misconduct before the grand jury, and that the indictment was not timely filed, multiplicitious, and jurisdictionally defective. The Court notes that many of petitioner's claims have no factual support in the record. For example, with respect to a claim that the proceedings were defective because the prosecutor failed to respond to a Grand Jury request for medical records, the trial court found that the Grand Jury never made such a request. See Appx. C at 112; Pet. at 9.

11

It is well-settled that any errors in state grand jury proceedings involving sufficiency of grand jury evidence, use of misleading and prejudicial evidence, and instructions given to the grand jury do not entitle a petitioner to habeas relief. Lopez v. Riley, 865 F.2d 30, 33 (2d Cir. 1989) (citing U.S. v. Mechanik, 475 U.S. 66 (1986)). The verdict of guilty by the petit jury at Fulton's trial necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict him, but also that the defendant is "in fact guilty as charged beyond a reasonable doubt." Mechanik, 475 U.S. at 68 (1986).

Petitioner's claims relating to the indictment similarly do not present federal constitutional questions. The Fifth Amendment right to be tried for a felony only upon a grand jury indictment was not incorporated by the Due Process Clause of the Fourteenth Amendment, and therefore does not pertain to the states. See Hurtado v. California, 110 U.S. 516 (1884); LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002); Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990). Thus, petitioner's right to be tried on a felony only upon indictment by a grand jury is derived solely from the New York State Constitution. See N.Y. Const., art. I, § 6. Federal habeas review is available "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States." 28 U.S.C. 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). As such, these claims are not cognizable in a federal habeas proceeding and are dismissed.

### c. Insufficiency of the Evidence

Fulton next argues that his conviction is not supported by legally sufficient evidence, primarily because the victim's testimony at trial was not credible. See Pet. 31. In reviewing a claim of legal sufficiency, "a jury verdict is to be upheld where, taking a view of the case most favorable to the government, there is substantial evidence to support it." Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984). "The habeas court is not to substitute its view of the evidence for that of the jury." Id. (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

The basis for petitioner's argument is clearly an issue of witness credibility, and such determinations are properly made by the jury. A federal habeas court must "resolve all issues of credibility[ ] in favor of the jury's verdict." United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998). A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Maldonado v. Scully, 86 F.3d 32, 35 (2d

Cir. 1996).

Here, the jury weighed and ultimately found the testimony offered by the witness to be credible. The Court finds no reason to disturb the jury's finding. To the extent Fulton makes the argument that the victim's unsworn testimony was not sufficiently corroborated, this too lacks a legal and factual basis. See Pet. at 31. Under New York law, evidence that corroborates the unsworn testimony of an infant is "legally sufficient if it tends to establish the crime and that petitioner committed it." People v. Groff, 71 N.Y.2d 101, 109 (1987). Contrary to petitioner's assertion, Z.J. testified as a sworn witness at trial. T. 213-14. Further, nothing in the record indicates that the victim was not qualified to be sworn as a witness. See C.P.L. § 60.20; People v. Green, 181 A.D.2d 1041 (4th Dept. 1992). The Court concludes that this claim is without merit and is dismissed.

### d. **Excessive Sentence**

Petitioner's argument that his sentence is "illegal and unlawful" largely rests on his underlying contention that the indictment was defective (discussed *infra*, Part III.B.1.). Pet. 31-32. He also claims that he should have received an indeterminate term of imprisonment rather than a determinate one. This claim too, lacks merit, and is not proper for habeas review. A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v.

Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion); see also Howard v. McGinnis, 632 F.Supp.2d 253 (W.D.N.Y. 2009).

Petitioner was sentenced as a second felony offender, with the offense at issue being a violent felony offense. Pursuant to N.Y. Penal Law § 70.06(6)(a), the court was required to impose a determinate sentence between eight and twenty-five years. The trial court sentenced Fulton to a determinate twenty-five year sentence, the maximum that he could receive. Because petitioner's sentence falls within the statutory range, this claim does not present a constitutional issue for habeas review and is dismissed.

### e. Ineffective Assistance of Counsel

Fulton next argues that his trial counsel, Ms. Jo Ann Leegant, Esq., was constitutionally ineffective because she "neglected to make the necessary and vital objections at trial . . . failed to present pertinent evidence . . . and refused to submit post verdict 330 motion . . . at petitioner's request." Pet. 34.

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense. The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." Strickland v. Washington, 466 U.S. 668, 685 (1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective

assistance." Strickland, 466 U.S. at 687. To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." Id. To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort ... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [ ] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." Id. at 695-96.

Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome ... would have been different[.]" McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome," Strickland, 466 U.S. at 688; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. at 693. Thus,

even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt. Here, Fulton simply makes a series of unsubstantiated allegations that lack a factual basis. For example, petitioner claims that "[c]ounsel made a complete farce of justice in what she offered as legal representation pursuant to the Sixth Amend[ment]," but provides no facts to support his contention. Pet. 34. As such, has not identified the acts or omissions that are "alleged not to have been the result of reasonable professional judgment" required by Strickland. 466 U.S. at 689.

The Court notes that petitioner went through four different attorneys throughout the course of these proceedings due to his flagrant refusal to cooperate with them. See Decision and Order, No. 378/01 dated 1/28/2008; Appx. C at 132 (finding that petitioner forfeited his right to appointed counsel by his conduct).[3] Notwithstanding that decision, Fulton again requested counsel, and the trial court appointed Ms. Leegant to represent him on January 7, 2002. During a pre-trial hearing, petitioner asserted to the

---

[3] The Court calls attention to few examples of petitioner's outrageous behavior during his proceedings. At one point, Fulton wore a sign into the court that said "[Attorney's Name], I'm a sell-out for the District Attorney's Office". See Transcript dated 7/24/2001 at 2. Petitioner also filed a grievance against his third attorney, resulting in his relief from the assignment. Transcript dated 12/4/2001 at 2. Prior to the assignment of his fourth attorney, petitioner told the trial court that he had "gotten along" with all of his attorneys, but that "one lawyer asked to be relieved because he was found sleeping in the courtroom." Transcript dated 1/2/2002. The record, however, indicates the exact opposite. See Transcript dated 7/12/2001 at 6.

17

trial court that "[Ms. Leegant] is a bit reluctant to make aggressive statements here before the Court. There seems to be some type of intimidation," despite counsel's vigorous arguments set forth in the motion papers. Transcript dated 3/15/2002 at 8. Undeterred by Fulton's lack of cooperation, the record indicates that Ms. Leegant put forth a zealous defense, and made the appropriate motions and arguments before and during the trial. With respect to his allegation that Ms. Leegant "refused" to submit a post-verdict motion to set aside the verdict pursuant to C.P.L. § 330, this too is baseless. Subsequent to the trial, petitioner initiated a lawsuit against Ms. Leegant, compelling her to seek her removal from the case prior to sentencing. S. 3. As a result, the Court must dismiss this claim as patently frivolous and without merit. Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *8 n.14 (S.D.N.Y. Apr. 16, 2003); Colorio v. Hornbeck, No. 05 CV 4984(NG)(VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009).

### f.  Judicial Misconduct

As Fulton's final claim for habeas relief, he makes myriad allegations of judicial misconduct, insisting that the trial judge deliberately mis-instructed the jury, permitted the prosecution to present perjured testimony, deprived petitioner to testify on his own behalf, and exhibited favoritism toward the prosecution. Petitioner again is making wild accusations that amount to nothing

more than some sort of conspiracy theory.[4] There is nothing in the record to substantiate petitioner's claim that he was deprived of a fair trial and due process under the Fifth and Fourteenth Amendments. See Daye v. Attorney Gen. of State of N.Y., 712 F.2d 1566, 1570 (2d Cir. 1983). This claim is dismissed.

## IV. Conclusion

For the reasons stated above, Alvin Fulton, Jr.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated: November 5, 2009
Rochester, New York

---

[4] One such allegation reads, "[the] Trial Judge not only abused discretion but deliberately and willingly sought to thwart petitioner's defence [sic], and to aide the Prosecution in obtaining an illegal conviction at all cost [sic]." Pet'r Reply Br. at 9. (Dkt. #8)